[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, Slip Opinion No. 2016-Ohio-7381.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-7381

OLENTANGY LOCAL SCHOOLS BOARD OF EDUCATION, APPELLANT, *v.*

DELAWARE COUNTY BOARD OF REVISION ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, Slip Opinion No. 2016-Ohio-7381.]**

*Taxation—Real-property valuation—Board of Tax Appeals erred by failing to justify reliance on deputy auditor's report—Auditor's valuation negated—Cause remanded to BTA for independent valuation of subject property based on existing record and any new evidence that may be received, at BTA's discretion.*

(No. 2014-1582—Submitted May 31, 2016—Decided October 20, 2016.)

APPEAL from the Board of Tax Appeals, No. 2012-694.

_____

**Per Curiam.**

{¶ 1} This real-property-valuation case concerns the proper valuation for tax year 2010 of a 29.307-acre, undeveloped tract that is made up of three

noncontiguous parcels and was purchased on February 1, 2007, for the development of ranch condominiums. Because two of the three parcels were in the current-agricultural-use-valuation ("CAUV") program on the tax-lien date, this decision will, as a practical matter, affect only a single, .659-acre parcel, the market value of which is to be determined as part of an economic unit with the other parcels. The county auditor originally valued the entire tract using the 2007 sale price, with a portion of that price allocated to each of the individual parcels, but the Delaware County Board of Revision ("BOR") ordered reductions based on a deputy auditor's report that was prepared before the BOR hearing but not made part of the record until the case was appealed to the Board of Tax Appeals ("BTA").

{¶ 2} The BTA retained the reduced valuations, and the Olentangy Local Schools Board of Education ("BOE") appealed, claiming that adoption of the deputy auditor's report by the BOR and the BTA constituted both substantive and procedural error. The BOE advocates reinstatement of the auditor's original valuation that was based on the 2007 sale price.

{¶ 3} The peculiar circumstances of this case lead us to vacate the BTA's decision and remand for further proceedings before the BTA. The evidence in the record negates the validity of the 2007 sale price but does not clearly establish an alternative valuation for the property. On remand, the BTA will review the evidence before it and take additional evidence as necessary to determine the 2010 value of the property.

## FACTUAL BACKGROUND

### 1. *The BOR proceedings*

{¶ 4} The property owner acquired the property at issue for $4,700,000 in 2007, for the purpose of building 158 ranch condominiums. The purchase price was determined based on a projected cost per condo. The BOR adopted the purchase price as the property value for tax year 2007, based on a complaint by

the BOE. The auditor carried over the $4,700,000 sale price as the property value for 2010, and the property owner filed a complaint seeking a reduction in value.[1]

{¶ 5} The BOR held a hearing on January 31, 2012, at which the owner presented the testimony of its president, Rowland Giller, along with a written appraisal report for a different but nearby parcel. The BOE objected to the admission of the appraisal report. Giller testified that the 2007 sale price was not indicative of the 2010 value of the subject property because of changes in market conditions and expressed his view that the appraisal of the nearby property at $8,000 per acre indicated that the value for the property at issue should be reduced.

{¶ 6} On the basis of its evidence, the owner advocated for a valuation of $439,620 for the entire three-parcel tract at issue, which computes to approximately $15,000 per acre. The owner's proposed reduction for the sole parcel that is not in the CAUV program would have taken the value for that parcel from $12,600 to $9,885.

## 2. *The BOR's decision*

{¶ 7} The BOR deliberated on February 7, 2012. Two delegates were present; one moved to reduce the property value, suggesting that the large parcel should have a value of $865,100 "per our appraiser's comparables," rather than the $4,168,700 value assigned by the auditor, and that the other two parcels should have reduced values of $124,900 and $4,400, respectively, for a total value for the three-parcel tract of $994,400—a 79 percent reduction from the auditor's sale-price valuation of $4,700,500. The BOR adopted these reductions, which were based on a report prepared by Deputy Auditor Michael Schuh that was later

---

[1] Of the three parcels making up the tract, one is large, comprising 25.033 acres, and two are much smaller, comprising 3.615 acres and .659 acres, respectively. The auditor's $4,700,500 valuation was allocated among the parcels as follows: $4,168,700 for the large parcel, $519,200 for the larger of the two smaller parcels, and $12,600 for the smallest parcel. The property record cards

certified to the BTA as part of the record in the case even though the report had never been made available to the parties or introduced at the BOR hearing.

### 3. *The deputy auditor's report*

{¶ 8} The deputy auditor's report stated that "[t]here has [sic] not been any recent large acreage tract sales at any value close to that 2007 sales value" and noted that "[s]ales have been as low as $15,000 per acre or less for large sites with many tracts being held for when the market recovers." The report opined that a "large reduction [was] warranted" on account of an "estimated several year holding period." The deputy auditor recommended "values in the $34,000–35,000 per acre range, which is a little over 20 % of the present value." He further recommended "a yearly review on these properties to check for any activity or signs of development," which if detected should lead to an upward adjustment of values.

{¶ 9} Attached to the deputy auditor's report is a single page from an unidentified appraisal report, setting forth adjustments to an unidentified subject property. The five land-sale comparables listed on the page are sales from August 2007, January 2008 (two sales), September 2008, and September 2006. The appraisal report made a market-conditions adjustment for the 2006 sale; the range of prices was from $30,814 to $50,685 per acre. (For context, the February 2007 sale of the property at issue here fetched $160,000 per acre.)

### 4. *The BTA appeal*

{¶ 10} The BOE appealed to the BTA, which held a hearing on May 29, 2013, at which counsel for the property owner and counsel for the BOE appeared. The BOE advocated the use of the sale price and presented the subject property's 2005/2007 purchase agreement, deed, and conveyance-fee statement over the objection of the property owner.

---

indicate that the two larger parcels were in the CAUV program, leaving only the smallest parcel outside that program.

**{¶ 11}** The BTA issued its decision on August 13, 2014. First, the BTA acknowledged the 2007 sale price of $4,700,500 but found the sale price to be an unreliable indicator of value because the sale took place more than 24 months before the 2010 lien date. BTA No. 2012-694, 2014 Ohio Tax LEXIS 3845, 5 (Aug. 13, 2014). Second, the BTA stated its conclusion that "the property owner demonstrated that the initial assessment of the subject property," i.e. the auditor's use of the sale price, "overstated its value." *Id*. The rezoned property had not been developed "due to decline in the market." *Id*.

**{¶ 12}** Third, the BTA noted that the BOR "took into consideration the taxpayer's evidence, as well as information available to it, and concluded that an adjustment to value was warranted." *Id*. at 6. Finally, the BTA contended that the BOE had presented "no evidence of value, relying instead solely upon its legal arguments that the BOR's decision is unsupported." *Id*. The BTA stated, "[W]e find insufficient the arguments advocating for reinstatement of the originally assessed values since we agree the record does not support such amounts. Instead, we find the adjustments effected by the BOR to be supported by the record." *Id*. at 7.

**{¶ 13}** The BOE has appealed; it faults on both procedural and substantive grounds the BOR's adoption of the deputy auditor's recommendations and the BTA's approval of those adjustments.

### ANALYSIS

*1. The BTA erred by failing to justify its reliance on the deputy auditor's report*

**{¶ 14}** Arguing that the BTA erred in relying on the deputy auditor's report, the BOE cites several persuasive BTA decisions that have rejected reports or recommendations prepared by county appraisers or consultants under circumstances similar to those in the present case. *See Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, BTA No. 2010-Q-3649, 2013 Ohio Tax LEXIS 111 (Jan. 15, 2013); *Olentangy Local Schools Bd. of Edn. v.*

*Delaware Cty. Bd. of Revision*, BTA No. 2012-76, 2013 Ohio Tax LEXIS 5738 (Oct. 23, 2013); *Hagedorn v. Hamilton Cty. Bd. of Revision*, BTA No. 2009-K-2951, 2010 Ohio Tax LEXIS 1267 (July 20, 2010); *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, BTA No. 2010-3610, 2014 Ohio Tax LEXIS 3096 (May 27, 2014). In each of these cases, the BTA reviewed the material relied on by the BOR and found it wanting, with the result that in each of the cases, the BTA reverted to the auditor's valuation. The BOE advocates the same outcome here. [2]

{¶ 15} We hold that the BTA erred in failing to evaluate the probative character of the deputy auditor's report before accepting it as a basis for the BOR's reductions. In the decisions cited by the BOE, the BTA properly weighed the probative force of this type of evidence; in this case, by contrast, the BTA merely stated that the "adjustments effected by the BOR [were] supported by the record" without giving serious consideration to the deputy auditor's comparables and method. In particular, the three parcels at issue had previously been regarded as an economic unit because they were being held by a single entity for purposes of development. *See Park Ridge Co. v. Franklin Cty. Bd. of Revision*, 29 Ohio St.3d 12, 504 N.E.2d 1116 (1987), paragraph two of the syllabus; *compare Dublin City Schools Bd. of Edn.*, 139 Ohio St.3d 212, 2014-Ohio-1940, 11 N.E.3d 222, ¶ 16-18 (under R.C. 5311.11, it is legally improper to value multiple condominiums as a single economic unit once they have been divided into separate condominium parcels).[3] The deputy auditor, by contrast, may have

---

[2] The BOE also argues that the deputy auditor's report could not properly be relied upon by the BOR because (1) it was not made available before or at the BOR hearing and (2) the deputy auditor did not testify and thereby subject the report to cross-examination at the BOR. But because the BOE failed to specify this distinct, procedural point as error in the notice of appeal from the BTA to this court, the court lacks jurisdiction to grant relief on the point. *See Newman v. Levin*, 120 Ohio St.3d 127, 2008-Ohio-5202, 896 N.E.2d 995, ¶ 28. We express no opinion on the validity of the procedural point.

[3] Although the subdivision of the property into condominium parcels would trigger the legal requirement of separate valuation for each parcel, it appears that the assemblage of the three

valued each parcel separately according to its purely individual characteristics, and the BTA engaged in no analysis regarding why this approach could be justified under the circumstances.

### 2. The BTA should perform an independent valuation of the property

{¶ 16} The BOE argues that the absence of sufficient valuation evidence before the BOR and the BTA should lead to a reinstatement of the auditor's valuation. To be sure, the auditor's valuation is, in a proper case, a default to which recourse may be had when the evidence does not indicate a different value. *See Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 31, citing *Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 13. But those same two cases also note that an exception to the rule arises *when the evidence in the record negates the auditor's valuation. Colonial Village* at ¶ 24; *Dayton-Montgomery Cty. Port Auth.* at ¶ 22-23, 27. In such a situation, the record must be reviewed to see if an independent valuation can be performed. *Colonial Village* at ¶ 25; *Dayton-Montgomery County Port Auth.* at ¶ 27-28; *see also Sapina v. Cuyahoga Cty. Bd. of Revision*, 136 Ohio St.3d 188, 2013-Ohio-3028, 992 N.E.2d 1117, ¶ 27; *Copley-Fairlawn City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, ___ Ohio St.3d ___, 2016-Ohio-1485, ___ N.E.3d ___, ¶ 17.

{¶ 17} The BOE insists that a standard of "competent and probative evidence" must be satisfied, yet the value that the BOE asks the BTA to reinstate has itself been completely discredited. Quite simply, none of the BTA decisions cited by the BOE involved a sale price that had been discredited because its recency had been rebutted, as in the present case.

---

parcels in this case should be viewed as an economic unit for purposes of valuation as of the tax lien date. If the BTA makes a contrary finding on remand, it should provide an explanation for that finding on the record.

**{¶ 18}** Here, the evidence that was presented plainly negated the auditor's valuation, which had been based on the sale price. The testimony showed that the post-sale economic crash lowered the market for development, thereby affecting the property's value. The court has previously regarded such testimony as probative in refuting an auditor's valuation. *See AP Hotels of Illinois, Inc. v. Franklin Cty. Bd. of Revision*, 118 Ohio St.3d 343, 2008-Ohio-2565, 889 N.E.2d 115, ¶ 17-18 (it would have been error to revert to the auditor's valuation in light of evidence that the September 11, 2001 terrorist attacks depressed the demand for motel services). And we have also noted that the BTA has a duty to consider de novo on appeal the viability of using the sale price as the property value. *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, ___ Ohio St.3d ___, 2016-Ohio-3025, ___ N.E.3d ___, ¶ 11; *accord Mason City School Dist. Bd. of Edn. v. Warren Cty. Bd. of Revision*, 138 Ohio St.3d 153, 2014-Ohio-104, 4 N.E.3d 1027, ¶ 47-49.

**{¶ 19}** The auditor used the 2007 sale price allocated to the three parcels; the evidence presented both rebutted the presumptive recency of the sale and negated the auditor's use of it.[4] Under *Colonial Village*, this means that the duty of the tax tribunals was to use whatever evidence they could find in the record to perform an independent valuation. *Colonial Village* at ¶ 25; *Copley-Fairlawn City School Dist.* at ¶ 17-18, citing *Dublin City Schools Bd. of Edn.*, 139 Ohio

[4] The BTA erred by ignoring the negation of the auditor's valuation and focusing solely on the passage of more than 24 months between the sale and the tax lien date, citing our decision in *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, 139 Ohio St.3d 92, 2014-Ohio-1588, 9 N.E.3d 1004. *Akron City School Dist.* presents the opposite from the situation we confront in this case. In that case, we refused to accord a presumption of validity to a sale when (1) the auditor had performed the required reappraisal for the tax year at issue, (2) the sale was more than 24 months before the lien date of the reappraisal year, and (3) the auditor had declined to use the sale in the reappraisal. Here, the auditor *did use the sale*, *rather than disregard it*; under the reasoning of *Akron City School Dist.*, the distinction is significant and makes the holding of that case inapplicable here.

St.3d 193, 2013-Ohio-4543, 11 N.E.3d 206, at ¶ 26, undisturbed on reconsideration, 139 Ohio St.3d 212, 2014-Ohio-1940, 11 N.E.3d 222, ¶ 30.

{¶ 20} To be sure, the case law acknowledges the possibility that the record may not contain such evidence—even if the auditor's valuation has been negated. *Shinkle v. Ashtabula Cty. Bd. of Revision*, 135 Ohio St.3d 227, 2013-Ohio-397, 985 N.E.2d 1243, ¶ 28; *Vandalia-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, ¶ 24. Under those circumstances, the auditor's value may ordinarily be reinstated.

{¶ 21} But the BOE's reliance on this latter proposition is misplaced in this context. In *Vandalia-Butler City Schools*, the negation of the auditor's valuation was sufficient to require a remand with the possibility that the BTA would obtain missing evidence to conduct its valuation. We instructed not that the BTA should reinstate the auditor's valuation on remand but rather that "the existence of those [evidentiary] gaps does not relieve the BTA of the obligation to independently weigh the evidence." *Id*. at ¶ 27. In the same vein, we have vacated the BTA's decision and remanded for an independent valuation by the BTA, *Ross v. Cuyahoga Cty. Bd. of Revision*, 146 Ohio St.3d 12, 2015-Ohio-3443, 51 N.E.3d 578, when the existing record contained little more than "raw sales data," BTA No. 2013-607, 2013 WL 6834185, at *1 (Nov. 13, 2013). We have even remanded with the explicit suggestion that the BTA hear additional evidence. *Copley-Fairlawn City School Dist.*, ___ Ohio St.3d ___, 2016-Ohio-1485, ___ N.E.3d ___, at ¶ 31; *Cannata v. Cuyahoga Cty. Bd. of Revision*, ___ Ohio St.3d ___, 2016-Ohio-1094, ___ N.E.3d ___, ¶ 21, 32.

{¶ 22} Here, the BOR used evidence before it to order a reduced valuation when the evidence clearly negated the auditor's valuation, and the BTA approved. The problem lies in the apparently flawed character of that evidence and the absence of any explanation by the BTA as to why it found the deputy auditor's

report to be reliable and probative. We therefore vacate and remand for a careful evaluation of the evidence by the BTA and a determination by the BTA of the value of the property at issue.

## CONCLUSION

**{¶ 23}** For the foregoing reasons, we vacate the BTA's decision, and we remand with instructions that the BTA perform an independent valuation of the property, based on the existing record and on any additional evidence that may be heard or received, at the BTA's discretion.

Decision vacated

and cause remanded.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Rich & Gillis Law Group, L.L.C., and Mark H. Gillis, for appellant.

Vorys, Sater, Seymour & Pease, L.L.P., Nicholas M.J. Ray, Hilary J. Houston, and Lauren M. Johnson, for appellee Olentangy Crossing, L.L.C.

_____