OLMSTED FALLS VILLAGE ASSOCIATION, APPELLANT, *v.*
CUYAHOGA COUNTY BOARD OF REVISION; OLMSTED
FALLS BOARD OF EDUCATION, APPELLEE.

[Cite as *Olmsted Falls Village Assn. v. Cuyahoga Cty.
Bd. of Revision* (1996), 75 Ohio St.3d 552.]

(No. 95–839—Submitted December 14, 1995—Decided June 5, 1996.)

554

*Fred Siegel Co., L.P.A.*, and *Annrita S. Johnson*, for appellant.

*Kolick & Kondzer, Daniel J. Kolick* and *John P. Desimone*, for appellee.

*Per Curiam.* We reverse the BTA's decision and remand this matter to the BTA because the BTA based its decision on evidence that did not value the property as of the tax lien date.

R.C. 5715.19(A)(1)(d) authorizes a property owner to file complaints with a board of revision against determinations made by the county auditor concerning the true value of the owner's property. According to R.C. 5715.19(D), "[t]he determination of any such complaint shall relate back to the date when the lien for taxes * * * for the current year attached * * *." The lien for taxes for each year attaches on the first day of January. R.C. 323.11.

To emphasize the importance of this date, R.C. 5715.01, which authorizes the Tax Commissioner to direct and supervise the assessment of real property for taxation, including adopting rules to that end, states:

"The commissioner shall neither adopt nor enforce any rule that requires true value for any tax year to be any value other than the true value in money on the tax lien date of such tax year * * *."

The BTA valued the property according to Canitia's opinion of value. However, Canitia did not value the property as of any certain date. According to his testimony, he valued the property as of the entire year. To him, the tax lien date

was a reflective date, not the valuation date. Thus, the evidence on which the BTA relied for its ultimate decision is unlawful. *SFZ Transp., Inc. v. Limbach* (1993), 66 Ohio St.3d 602, 613 N.E.2d 1037.

We emphasize that the BTA " * * * may consider pre- and post-tax lien date factors that affect the true value of the taxpayer's property on the tax lien date." *Youngstown Sheet & Tube Co. v. Mahoning Cty. Bd. of Revision* (1981), 66 Ohio St.2d 398, 20 O.O.3d 349, 422 N.E.2d 846, paragraph two of the syllabus. However, the BTA must base its decision on an opinion of true value that expresses a value for the property as of the tax lien date of the year in question.

We also stress that the BTA decides the factual matters in these cases, *Wolf v. Cuyahoga Cty. Bd. of Revision* (1984), 11 Ohio St.3d 205, 207, 11 OBR 523, 524, 465 N.E.2d 50, 52, and that "[w]e will not overrule BTA findings of fact that are based upon sufficient probative evidence." *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 201, 527 N.E.2d 874, 877.

We turn now to some other specific claims of error presented by the Association. First, the Association claims that the BTA erred when it did not employ the actual income and expenses for the property. In *Webb Corp. v. Lucas Cty. Bd. of Revision* (1995), 72 Ohio St.3d 36, 647 N.E.2d 162, we held that an appraiser may employ actual income as reduced by actual expenses if both amounts conform to the market. We did not require such use. Moreover, we did not, in *Villa Park Ltd. v. Clark Cty. Bd. of Revision* (1994), 68 Ohio St.3d 215, 625 N.E.2d 613, reject the use of a *pro forma* expense rate. Instead, we required the BTA to make factual findings, supported by the record, of the appropriate market rents and expenses to be used in the income approach to value. *Id.* at 218, 625 N.E.2d at 615.

Furthermore, we did not require the BTA to deduct a reserve for replacement in *Freshwater v. Belmont Cty. Bd. of Revision* (1991), 58 Ohio St.3d 140, 568 N.E.2d 1215, as claimed by the Association. In that case, the BTA refused to consider such a deduction, but we reversed and remanded the matter for the BTA to reconsider the components included in and the deductibility of reserves for replacement. We ruled that such an expense category was a proper element in an income approach analysis. We did not require the deduction of a reserve for replacement. In this case, we note, neither appraiser proposed a reserve for replacement. Thus, the record does not support such a reserve deduction.

In summary, as to these latter claims, "[w]e decline to bind the BTA to a particular method of valuation because the imposition of rigid methodological strictures would necessarily impinge upon the BTA's wide discretion to weigh evidence and assess the credibility of witnesses." *Youngstown Sheet & Tube Co. v. Mahoning Cty. Bd. of Revision, supra,* 66 Ohio St.2d at 402, 20 O.O.3d at 352, 422 N.E.2d at 849.

Finally, the Association claims that Canitia is not qualified to testify, since he has not obtained a certificate under R.C. Chapter 4763, the chapter governing real estate appraisers. However, R.C. 4763.13(F) states:

"Nothing in this chapter shall preclude a person who is not licensed or certified under this chapter from appraising real estate for compensation."

Thus, Canitia may testify about the true value of real estate if the BTA decides he is qualified.

Accordingly, we reverse the BTA's decision because it is based on an opinion of true value that did not value the property as of the tax lien date. We remand the cause to the BTA to revalue the property.

*Decision reversed*
*and cause remanded.*

MOYER, C.J., F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

DOUGLAS and RESNICK, JJ., dissent.

WRIGHT, J., not participating.

DOUGLAS, J., dissenting. The semantical argument made by the majority does not change, in any way, the true value of the property in question as of tax lien date. Once again, a majority of the court is invading the province of the BTA. I would affirm the decision of the BTA.

RESNICK, J., concurs in the foregoing dissenting opinion.