D&A ROFAEL ENTERPRISES, INC., D.B.A. THE GREAT STEAK & FRY COMPANY, APPELLANT, *v.* TRACY, TAX COMMISSIONER, APPELLEE.

SHTEIWI, D.B.A. THE GREAT STEAK & FRY COMPANY, APPELLANT, *v.* TRACY, TAX COMMISSIONER, APPELLEE.

[Cite as *D&A Rofael Enterprises, Inc. v. Tracy* (1999), 85 Ohio St.3d 118.]

(Nos. 98–1403 and 98–1404—Submitted December 10, 1998—Decided March 31, 1999.)

*Frost & Jacobs L.L.P.* and *Larry H. McMillin,* for appellants.

*Betty D. Montgomery,* Attorney General, and *Duane M. White,* Assistant Attorney General, for appellee.

---

***Per Curiam.*** Section 3(C), Article XII of the Ohio Constitution provides that "no excise tax shall be levied or collected upon the sale or purchase of food for human consumption off the premises where sold." The constitutional provision has been enacted as R.C. 5739.02(B)(2), which exempts from sales tax "[s]ales of food for human consumption off the premises where sold." The issue presented by this case is whether food consumed in the food court areas of the malls is consumed on or off the "premises," as that term is defined in R.C. 5739.01(K).

R.C. 5739.01(K) defines "premises" as follows:

" 'Premises' includes any real property or portion thereof upon which any person engages in selling tangible personal property at retail or making retail sales and also includes any real property or portion thereof designated for, or devoted to, use in conjunction with the business engaged in by such person."

The only case decided by this court involving the legislative definition of "premises" in R.C. 5739.01 was *Ilersich v. Schneider* (1964), 176 Ohio St. 255, 27 O.O.2d 157, 199 N.E.2d 388. The taxpayer in *Ilersich* operated a drive-in soft ice cream and soft drink business. Sales were made to customers through windows in the building located on the property and the products were sold in containers. A blacktop area large enough to accommodate thirty-eight motor vehicles surrounded the building from which the sales were made. A number of the customers ate or drank their purchases on the property, but away from the building.

The taxpayer in *Ilersich* contended that former R.C. 5739.01(L), now renumbered R.C. 5739.01(K), was unconstitutional and that our prior decisions precluded the imposition of a tax where the food was not consumed at the immediate and precise place where it was purchased. This court found the General Assembly's definition of "premises" to be a valid enactment, and that it represented "a permissible legislative interpretation and application of the indefinite constitutional phrase, 'off the premises where sold,' to meet modern merchandising practices." *Id.* at 257, 27 O.O.2d at 158, 199 N.E.2d at 390.

Here, appellants contend that the term "premises" in R.C. 5739.01(K) does not include the food court areas adjacent to appellants' restaurants. We disagree.

The Tax Commissioner cites *Buddies Lunch Sys., Inc. v. Bowers* (1960), 170 Ohio St. 410, 11 O.O.2d 160, 165 N.E.2d 924, as support for his position. While the facts in *Buddies* are similar, it involved an assessment that was made prior to the effective date of the enactment of what is now R.C. 5739.01(K). Although *Buddies* contains a reference to what is now R.C. 5739.01(K), the definition of "premises" set forth therein was not the basis for this court's decision.

R.C. 5739.01(K) consists of two parts. The first part of R.C. 5739.01(K) includes within the definition of "premises" "any real property or portion thereof upon which any person engages in selling tangible personal property at retail or making retail sales." Here, the real property or portion thereof upon which appellants engage in selling and making retail sales would include only the small area leased by appellants. Since no food was consumed on the real property or portion thereof leased by appellants, the first part of R.C. 5739.01(K) would not subject appellants' sales to sales tax.

The second part of R.C. 5739.01(K) provides that the term "premises" "also includes any real property or portion thereof designated for, or devoted to, use in conjunction with the business engaged in by such person." The second part of

R.C. 5739.01(K) obviously is intended to expand the meaning of "premises" to include additional real property beyond just the real property or portion thereof where the retail sale or selling took place. Nowhere in R.C. 5739.01(K) is there any requirement that the additional real property or portion thereof be owned or controlled by the person making the retail sale or engaging in selling. In addition, there is no requirement contained in the second part of R.C. 5739.01(K) that any retail sale or selling must take place on the additional real property or portion thereof.

There are two requirements that must be met for the additional real property or portion thereof to be considered within the definition of "premises": (1) the real property be either *designated* for, or *devoted* to (2) use in *conjunction* with the business engaged in by such person.

The BTA found that "the food court or picnic area [is] designed [*sic,* designated] and devoted to use in conjunction with the sale of and consumption of food from the food court restaurants." This determination by the BTA is a determination of ultimate fact subject to review by this court. In *Ace Steel Baling, Inc. v. Porterfield* (1969), 19 Ohio St.2d 137, 142, 48 O.O.2d 169, 171, 249 N.E.2d 892, 895, this court stated:

"The decision of the board derived from an inference of an ultimate fact, *i.e.,* a factual conclusion derived from given basic facts. The reasonableness of such an inference is a question appropriate for judicial determination. 'What the evidence in a case tends to prove, is a question of law; and when all the facts are admitted which the evidence tends to prove, the effect of such facts raises a question of law only.' *Turner v. Turner* (1867), 17 Ohio St. 449, 452. See, also, *Southern Pacific Co. v. Pub. Util. Comm.* (1953), 41 Cal.2d 354, 362, 260 P.2d 70."

In *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1997), 77 Ohio St.3d 402, 405, 674 N.E.2d 696, 699, we stated:

"[W]e affirm the BTA's basic factual findings if sufficient, probative evidence of record supports these findings. We also affirm the BTA's rulings on credibility of witnesses and weight attributed to evidence if the BTA has exercised sound discretion in rendering these rulings. Finally, we affirm the BTA's findings on ultimate facts, *i.e.,* factual conclusions derived from given basic facts, *Ace Steel Baling, Inc. v. Porterfield* (1969), 19 Ohio St.2d 137, 142, 48 O.O.2d 169, 171–172, 249 N.E.2d 892, 895–896, if the evidence the BTA relies on meets these above conditions, and our analysis of the evidence and reading of the statutes and case law confirm its conclusion."

We must therefore consider whether the law and the evidence in this case support the BTA's determination of ultimate fact. The second part of R.C. 5731.01(K) requires that to be included within the definition of "premises," the real property must be either *designated* for, or *devoted* to, use in *conjunction*

with the business of the persons selling tangible personal property or making retail sales. Following the requirements of statutory construction in R.C. 1.42, we will consider the three terms italicized above according to their common usage.

Webster's Third New International Dictionary (1986) 612, defines "designate" to mean "to point out the location of" or "to choose and set apart." It defines "devote" to mean "to provide (something) for use." *Id.* at 620. Finally, the word "conjunction" is defined to mean "the act of conjoining or the state of being conjoined." *Id.* at 480. In turn, "conjoin" means "to join together (as separate entities) *for a common purpose or a common end.*" *Id.* at 479.

Comparing the preceding definitions with the facts herein confirms that the food court areas in the malls were designated for or devoted to use in conjunction with appellants' businesses. The food court areas are set apart and provided for the use of customers of appellants' businesses.

Leases for both the Galleria at Erieview and the Midway Mall contain essentially identical language stating, "The 'Food Court Area' shall be defined as that portion of the Shopping Center [Galleria] as LANDLORD in its discretion from time to time designates. * * * A depiction of the Food Court Area as presently designated by LANDLORD is set forth in Exhibit A–1." Section 1, Article 1. In addition, these leases provide that the food court seating area within the food court area "shall be defined as any common seating area or areas within the Food Court Area * * * as LANDLORD in its discretion from time to time designates, and which is made available for the non-exclusive use of the customers of the Food Court Area." *Id.* These leases also provide that the food court area is "designed and established to create the effect of an integrated yet diversified food service facility in which various food-related and other operations may be conducted." Preamble, Food Court Addendum.

Finally, these leases provide, "[I]t is the intent of the parties hereto that such food and beverages be sold primarily for consumption within the Food Court Seating Area." Section 1, Article 2.

The Beachwood Place lease provides that the picnic area is furnished "for the convenience of customers of Tenant [appellant] and other tenants of the PIC-NIC." Section 20.20, Article XX. Clearly the food court areas in all the malls are provided for and intended to be used by appellants' customers in conjunction with appellants' businesses.

The facts in this case support the BTA's finding that the food court areas within the malls are included within the definition of "premises" set forth in R.C.

123

5739.01(K).  For all the foregoing reasons, the decisions of the Board of Tax Appeals are reasonable and lawful and are, therefore, affirmed.

*Decisions affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.